IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| UNIVERSAL ENTERPRISES OF WEST ) | |
| VIRGINIA, LLC ) | Case No. 09-2862 |
| ) | |
| Debtor. ) | Chapter 11 |

**MEMORANDUM OPINION**

Sovereign Bank objects to the application of Universal Enterprises of West Virginia, LLC (the "Debtor"), to employ the Sherman Law Firm (the "Firm") as its legal counsel. The basis for the Bank's objection is that the Firm currently represents an associated Chapter 11 debtor, Alex Chevrolet, Inc., which leases real property from the Debtor and which is in substantial arrears on its pre-petition and post-petition lease payments. In the Bank's view, the Firm's proposed dual representation creates an interest adverse, or makes the Firm an interested person under 11 U.S.C. § 327(a) of the Bankruptcy Code such that the court cannot approve the Firm's retention by the Debtor.

Section 327(a) of the Bankruptcy Code authorizes a Chapter 11 debtor to employ an attorney to represent the bankruptcy estate. 11 U.S.C. §§ 327(a), 1107. The Chapter 11 debtor's selection of counsel, however, is subject to approval by the court. Absent a disqualifying interest, a court should not deprive a Chapter 11 debtor of its chosen counsel inasmuch as the attorney-client relationship is "highly confidential, demanding personal faith and confidence" and the relationship requires that the estate and its attorney "work harmoniously." *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934); *see also Kanter v. Robertson*, 102 F.2d 92, 93-94 (4th Cir. 1939) ("Ordinarily the choice of an attorney for the trustee rests with the trustee subject to the approval or disapproval of the referee or judge, and the choice of the trustee should be confirmed unless good reasons appear to

1

the contrary.").

Under § 327(a), the choice of an attorney is statutorily limited to those attorneys that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." A "disinterested person" is statutorily defined as one who: "(A) is not a creditor . . . and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reasons of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." 11 U.S.C. § 101(14).

Having either an "interest adverse" or not being "disinterested" is grounds to disqualify counsel under § 327(a).[1] *E.g.*, *Pierce v. Aetna Life Insurance Company (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir. 1987) ("Although framed conjunctively, the conditions are applied disjunctively; failure to meet either will result in disqualification."). Both requirements "are congressionally established *per se* rules that a bankruptcy court must apply in exercising its approval power over the appointment of professionals." *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992).

Unlike an actual conflict of interest, however, a potential conflict of interest does not require disqualification of counsel. When the conflict of interest is merely potential, a court has the discretion to approve the estate's choice of attorney. *E.g.*, *Marvel Entertainment Group*, 140 F.3d 471, 476 (3d Cir. 1998) (stating that the court may, within its discretion, disqualify counsel that has a potential conflict of interest). When a potential conflict exists, "a bankruptcy court should satisfy itself that the foreseeable legal . . . tasks present no inherent conflict or potential breach of confidence. The court should then weigh, against the risks of any *potential* difficulties, the potential advantages to the bankruptcy estate of a dual appointment, such as savings of time and money spent on the estate administration." *Harold & Williams Dev. Co.*, 977 F.2d at 911 (emphasis in original).

In this case, no actual conflict of interest currently exists in the Firm's proposed

---

[1] Although they are two disjunctive standards, a significant overlap exists; the presence of a conflict of interest will generally render proposed counsel both interested and as having an interest adverse to the estate. *E.g.*, *In re Martin*, 817 F.2d 175, 179 & n.4 (1st Cir. 1987) ("It can readily be appreciated that the concepts of disinterest on the one hand, and materially adverse interest, on the other hand, are somewhat intertwined. . . . It is simply with respect to the requirement of no adverse interest that the two prongs of this test are duplicative.").

2

representation of the Debtor and Alex Chevrolet. Although Alex Chevrolet owes the Debtor unpaid rent, the court is not aware of any dispute concerning that fact, or any dispute over the amount owed. Likewise, as pointed out by Sovereign Bank, if the Debtor moves for Alex Chevrolet to assume its existing lease, and Alex Chevrolet did not have the funds to do so, then that would create an actual conflict of interest in which one estate is a rival claimant.[2] *See, e.g.*, *United States v. Tatum*, 943 F.2d 370 (4th Cir. 1991) ("When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one. The effect of his action of necessity will adversely affect the appropriate defense of the other."); *Diva Jewelry Design, Inc.*, 367 B.R. 463, 472 (Bankr. S.D.N.Y. 2007) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y 2002)). At this point, however, no such action has been taken, and, in a case where other entities are controlled by the same principal, reaching a new agreement for a post-petition lease would not be difficult. Determining whether these potential conflicts, or others, between the Debtor and Alex Chevrolet will ripen into actual conflicts such that the court should exercise its discretion to disapprove of the Debtor's choice of counsel is a fact intensive inquiry.

Regarding the Debtor, on its schedule of real property, it lists an ownership interest in 1 Chevrolet Drive, Charles Town, West Virginia as having a scheduled value of $4 million. On its schedule of executory contracts and unexpired leases, the Debtor lists Alex Chevrolet as leasing that real property, including a commercial building, for retail service and the sales of automobiles. In 2007, the Debtor collected $202,209 in business rent, and in 2008 the Debtor collected $100,585 in business rent. No amount is listed for rent collected in 2009. The collection of rent is the Debtor's only source of income. Alex D. Rahmi is the 100% owner and manager of the Debtor. The Debtor's real property is encumbered by a deed of trust securing a note owed to Sovereign Bank in the approximate amount of $2.4 million. In addition to being secured by the real property, Sovereign Bank also has an assignment of rents clause giving it the right to collect rent payable to the Debtor. The note owed to Sovereign Bank is in default, and the Debtor has twice thwarted a foreclosure sale

---

[2] The court recognizes that the time to assume Alex Chevrolet's lease under the Bankruptcy Code may have terminated as a matter of law.

by filing a bankruptcy petition. According to Sovereign Bank, both Rahmi and Alex Chevrolet are guarantors of the note owed by the Debtor.

Regarding Alex Chevrolet, Rahmi, is likewise the 100% stockholder. Rahmi testified in court that Alex Chevrolet has rental obligation to the Debtor, and that Alex Chevrolet is in arrears on its rental obligations.

In any landlord and tenant relationship, especially in the case of a non-paying tenant, a host of potential claims may exist, and if such claims actually arise, the Firm would be representing parties on both sides of the dispute.

Of course, both the Debtor and Alex Chevrolet are controlled by Rahmi. As he stated in court, both the Debtor and Alex Chevrolet share an identity of interest or a unity of purpose in that the proposed plans of reorganization for both entities would be to rehabilitate Alex Chevrolet to enable it to pay rent to the Debtor. Likewise, the Debtor's bankruptcy estate would benefit by having a tenant in continuous occupancy of its property that has the financial ability to make rental payments. Both Alex Chevrolet and Rahmi have an interest in making sure that the Debtor is able to meet its loan obligations to Sovereign Bank due to their personal guarantees on the Debtor's note. Furthermore, requiring the appointment of independent professionals for both the Debtor and Alex Chevrolet would burden both estates with potentially duplicative fees and costs at the expense of the creditors of those estates.

In cases where an identity of interest or unity of purpose exists between two bankruptcy estates, courts have not prohibited dual legal representation by counsel even when the two estates have landlord-tenant or debtor-creditor relationships. *E.g.*, *In re Adelphia Communs. Corp.*, 342 B.R. 122, 128 (S.D.N.Y. 2006) ("'[T]he presence of intercompany claims between debtors represented by the same counsel does not automatically warrant the disqualification of that counsel.' Due to 'the substantial cost of requiring additional trustees or counsel in cases where individual debtors have claims against each other,' courts 'have taken a 'wait and see,' fact-driven, approach, to determine the extent to which [additional professionals are] necessary.'") (citation omitted); *In re Coal River Resources, Inc.*, 321 B.R. 184, 188 n.4 (W.D. Va. 2005) ("While there is no Fourth Circuit authority on point, it has been held that the mere fact of intercompany claims among debtor entities 'does not in and of itself constitute an impermissible conflict of interest that would justify disqualification.'") (citation omitted); *In re Platinum Oil Props., L.L.C.*, No. 09-10832, 2009 Bankr.

4

LEXIS 4191 at *34-35 (Bankr. D.N.M. Dec. 23, 2009) (adopting a wait and see approach to determine if the dual representation of the estate and a third party would ripen into an actual conflict over ownership of leases if the parties' joint intention to declare the leases part of the bankruptcy estate failed); *In re Gilbertson Rests. LLC*, No. 04-384, 2004 Bankr. LEXIS 987 at *14-15 (Bankr. N.D. Iowa May 3, 2004) (holding that a landlord tenant relationship between related bankruptcy estates did not disqualify counsel from representing both debtors when the debtors' business relationships were part of a common business enterprise, the debtors' interdependence was intentional, and when the debtors shared an identity of interest or unity of purpose in their common goal to reorganize and continue operating Burger King franchises).

Of course, a Chapter 11 debtor in possession acts in a fiduciary capacity to creditors of the bankruptcy estate; thus, a debtor in possession has an obligation not to act in a manner that could damage the estate or hinder a successful reorganization. *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985); *In re J.T.R. Corp.*, 958 F.2d 602, 605 (4th Cir. 1992). Likewise, a Chapter 11 debtor has a fiduciary duty to maximize the value of the bankruptcy estate for the benefit of creditors. *J.T.R. Corp.*, 958 F.2d at 605 ("The debtor-in-possession does not act in his own interests, but rather in the interests of the creditors.").

It may be that, as a fiduciary of creditors of its estate, the Debtor will have an obligation to evict Alex Chevrolet in an effort to find a higher and better use for its real property. At this time, however, no higher or better use is before the court, and this potential conflict may not ripen into an actual conflict. By allowing the Firm to represent both the Debtor and Alex Chevrolet at this time, the court is promoting the efficient, expeditious, and economical resolution of both bankruptcy cases because the Firm is already familiar with both businesses and requiring the Debtor to hire another attorney would be expensive and burdensome. Creditors of the Debtor's bankruptcy estate would be best protected by keeping these administrative fees low. In the event a party can demonstrate to the court that creditors of the Debtor's estate would be better off pursuing other avenues of reorganization other than that outlined by Rahmi, they may file their own reorganization plans (within the limits of the Bankruptcy Code) or seek conversion or dismissal of the case. Also, if an actual conflict does arise, new counsel could be appointed at that time. Consequently, the court will adopt a wait and see approach based on the Debtor's and Alex Chevrolet's professed identity of interest and unity of purpose in rehabilitating Alex Chevrolet such that it will be able to meet its

5

rent obligations to the Debtor.

The court will enter a separate order granting the Debtor's application to employ the Firm.